### CLOW *vs.* TAYLOR.

1. Decree for specific performance of an oral agreement for the convey-veyance of lands, refused for want of certainty in the agreement, and on the ground that the claims on which the complainant based his right to the relief were not substantiated by the evidence.

2. The defendant consenting to the stating of an account of the transactions between himself and the complainant, it was so ordered.

---

Bill for specific performance or an account. On final hearing on pleadings and proofs.

*Mr. Jacob Weart* and *Mr. L. S. Chatfield*, (of New York,) for complainant.

*Mr. C. H. Voorhis*, for defendant.

THE CHANCELLOR.

. The complainant seeks to compel the defendant to perform specifically, an oral agreement made between them in September, 1864, for the sale by the latter to the former of about fifty acres of land, in the county of Bergen. He alleges that he has paid the whole of the purchase money, and that possession of the premises was given to him by the defendant, in 1864, in pursuance of the agreement, and that he has had possession ever since, and has taken charge of the property, and kept it in order and repair, and spent money for those purposes, and made improvements thereon, and has paid all the taxes. The defendant, by his answer, sets up the statute of frauds, and while he admits that an oral agreement for the sale of the land by him to the complainant, at the price of $100 an acre, was made at the time stated by the latter, he alleges that the sale was on condition that the money should be paid immediately, and that the complainant should immediately build upon the premises a dwelling-house, of not less value than $3000 or $4000. He further says that he gave possession of the premises to the complainant under the expectation that the latter would comply with these conditions, and that the complainant retained possession for a short time only, and not more than a year, and that since that time he himself has had possession, and has made all repairs, and paid all the taxes, and he denies that the complainant has paid all the purchase money.

The evidence shows that the complainant took possession of the property in 1864, and planted some trees upon it, and tilled it for one season, and that he paid the tax for one year, but he does not appear to have had possession since then, and the taxes, since 1865, have been paid by the defendant. Indeed, the evidence is not that the complainant has, as he testifies, " virtually " held possession ever since 1864, but that since 1865 he has not had possession at all, but abandoned it in that year. Nor does it appear that the complainant has paid all of the purchase money. He paid on account of it, $600 on the 29th of September, 1864, and $400 on the 8th

of December following. For these payments, he has receipts signed by the defendant. He testifies that he paid to the defendant $500 more on the same account, in July, 1865, for which he has no receipt. He claims, also, to have paid $900, the full amount of a note made by the defendant, which he negotiated at the request of the latter, and, as he says, paid at its maturity out of his own funds. In addition to these sums, he testifies, and such appears to have been the fact, that it was agreed between him and the defendant that the money paid by him as the price of certain wood-land bought by them in partnership, in the spring of 1865, the title to which was taken by the defendant, in trust for himself and the complainant, should, in consideration of the release by the complainant to the defendant, of all his interest in that property, be credited to him on account of the purchase of the land in question in this suit. The amount so paid was, according to the complainant's testimony, $3380. These payments amount, in the aggregate, to $5780. But the evidence of the alleged payment of the sum of $500 is not sufficient to establish it. The complainant swears that he made it in July, 1865. He says he thinks it was the year before he and the defendant bought the wood-land in partnership; but that was in the spring of 1865. The payment, therefore, could not have been made in July of the year preceding that purchase, for the land in question was not bought by the complainant until September, 1864. Again, he testifies that when he agreed to join the defendant in the purchase of the wood-land, he owed the latter all of the purchase money of the land in question in this suit except $1000, which he had paid in the two payments of $600 and $400. Besides, he has no voucher for the payment, nor any corroboration of his own testimony in reference to it, and the defendant explicitly and absolutely denies it. Reckoning all the other payments, he had paid when the bill was filed, which was on the 19th of April, 1870, the sum of $5280, which was not enough to pay the purchase money, with the interest to which the defendant would have been entitled thereon. The defendant testifies that he received

from the complainant $870 only, as the proceeds of the
$900 note, and that of the purchase money of the wood-
land, he himself paid $50. He testifies, also, that the com-
plainant received of the proceeds of the sale of timber, &c.,
from the wood-land, while as yet they held it in partnership,
$1055, for $900 of which he accounted by stating that he had
applied the amount to the payment of the note for $900, and
that for the balance he did not account at all. The com-
plainant admits that he received that money, but swears that
he paid it to the defendant. He has no voucher for the pay-
ment, nor is he corroborated in any way, and the defendant
as positively swears that he never received it, and that the
complainant kept it, accounting for only $900 of it, and that
in the way above stated. It is urged on behalf of the com-
plainant, that the fact that he is in possession of the note is
corroboration of his statement. But it is to be remembered
that he admits that the note was placed in his hands, in order
that he might get it discounted for the defendant's accommo-
dation. It was payable to his order, and was endorsed by
him. Had he paid it out of the $1055, he would have re-
tained it as a voucher to be delivered up in settlement. By
the arrangement between him and the defendant, the latter
was to have the whole benefit of the wood-land property, in
consideration of which the complainant was to receive credit
on the purchase money of the land in question in this suit,
for the money paid by him for the wood-land. There is
no ground on which the alleged payment of the $900 can be
allowed to the complainant, on account of the purchase money.
Again, in June, 1868, the defendant, at the request of the com-
plainant, and in order to raise money for the latter, executed
his bond and mortgage on the premises in question in this
suit for $2000 and interest, upon which that amount was bor-
rowed and received by the complainant. The defendant was
compelled, through proceedings for foreclosure and sale of the
premises under that mortgage, and in order to save the prop-
erty from sale under the execution in those proceedings in the
hands of the sheriff, to pay the amount thereof, with interest

and costs, and he accordingly, in December, 1870, paid to the sheriff $2491.92, in satisfaction of the execution. This payment is set up in the answer to the original bill, but it was not until June 9th, 1875, four years and a half after the payment, that the complainant tendered the amount to the defendant.

In addition to the foregoing conditions, adverse to the complainant's claim for specific performance, there is another of quite as much importance. The agreement on which that claim is based, does not appear with certainty. The defendant swears that it was a condition that the complainant should immediately build a house and otherwise improve the property for his own occupation. The complainant denies that there was such an agreement; but it is evident that there was some agreement or understanding between them on the subject. He says he did not agree to build at any particular time; and in answer to the question whether he did not, at and before the agreement with the defendant, represent that his purpose in buying was to build on and improve the property as a residence for himself, he replies, "No further than I have previously stated in answer to a former question; that is, that I intended to build and live there." The defendant testifies that he sold the property to him at a low price, one-third of its present value, in consideration of his agreement to build upon and improve and occupy it for his residence. The complainant offers in evidence a letter from the defendant to him, dated December 9th, 1868. In that letter, the defendant says, in reply to a request on the part of the complainant that he would convey the land to a Mr. Davison, to whom the latter had sold it, "It is a bad season of the year, and I have no idea that the land can be sold at present, unless to some speculator, and that at large sacrifice. Speaking of injury to me, you know that I sold the property to you with the expectation of having it improved, and I would much prefer that if sold now it should be to some party that would improve; notwithstanding, if it would be of great benefit to you to have it sold, I will consent, if we can obtain a price that is satisfactory to you." It will be seen that he there

refers to the understanding between him and the complainant on the subject, and expresses a willingness to waive the condition, only out of consideration to the complainant. The improvements put on the property when the complainant was in possession, are some evidence on the subject. They were, it is admitted, made with a view to the building of a house there for the complainant's occupation. What the agreement was between the parties, in respect to building on and improving the property, does not appear satisfactorily, and specific performance would, therefore, for that reason alone, be denied. The complainant, by his supplemental bill, asks an account, and the defendant, by his answer thereto, expresses his willingness to state and settle the accounts between them. There will be a decree, referring it to a master to take the account, with directions to reject the alleged payments of $900 and $500, above mentioned, the decree of the court, in reference to which, on the evidence already taken, was requested by the complainant's counsel.